Douglas M. WATTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 6–81–026–CR.

Court of Appeals of Texas, Texarkana.

Dec. 15, 1981.

Pete Gilfeather, Fort Worth, for appellant.

Henry Wade, Dist. Atty., Stanley E. Keeton, Asst. Dist. Atty., Dallas, for appellee.

BLEIL, Justice.

Douglas Watts appeals his conviction of theft for more than $200.00 but less than $10,000.00. Based on the jury's verdict he was fined $1,500.00 and sentenced to seven years confinement. On this appeal Watts asserts as error admission of extraneous offenses, and insufficient evidence to support the verdict, a defective indictment, and prosecutor misconduct. We find no error and affirm the trial court's judgment.

In February, 1978, Charletta Krause, a divorcee, met Douglas Watts at the Currency Club, a night spot in Dallas, Texas. Watts told Charletta that he was a divorced car salesman with a son. He also told her he was a successful part-time country and western singer. He followed her home from the club that night, they visited and subsequently became involved in an affair which lasted through May.

Early in their relationship Watts asked for a hundred dollars to buy a used car to sell for profit. She declined to advance the monies and later he told her that she had missed out on a good deal. Next, he asked her for one thousand dollars to help buy two Mark V automobiles. Charletta obtained one thousand dollars from her former mother-in-law and gave the money to Watts. He told her he would contact her after he sold the cars. Later he called to say the deal was going well but both automobiles needed repairs. Thereafter, he asked her for $325.00 in cash for repairs. She gave him this money. Charletta began to have a difficult time reaching Watts until one day he appeared at her house. He cried and told her that he had lied about the money for the automobiles, but he was on probation in Tarrant County and the District Attorney was blackmailing him. Watts told her that he needed $2,500.00 to pay off the District Attorney so that he could have a fresh start in life. Charletta borrowed $2,500.00 from her mother and on May 5, gave Watts $1,175.00. On May 18, she gave Watts an additional $1,000.00 to finish paying off the District Attorney. Later in May Watts persuaded her to give him an additional $800.00 to invest in two cars in Corsicana, Texas. After that time Watts became increasingly difficult to contact. She went to his house to demand a repayment of the money and Watts became upset.

In July, 1978, Charletta filed charges with the Dallas County District Attorney. Watts then paid her $200.00. He subsequently called and asked whether the case would proceed to trial if she received $1,000.00 from him. Charletta told him if he wanted to repay the money, he could contact the District Attorney handling the case. Watts was upset that the case was going to trial. He told Charletta that she did not have enough proof against him and that, if tried, he would make her look like a whore.

■ Appellant complains both of the admission of similar extraneous offenses and the number of extraneous offenses admitted. We find no error in these regards. The trial court admitted into evidence the testimony of three witnesses who testified that Douglas Watts had committed similar acts on other occasions. An accused is entitled to be tried on an accusation made in the indictment and not for a collateral crime or for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr. App.1972). However, extraneous offenses are admissible to show intent or knowledge, state of mind, motive, system, scheme or plan. *Mallicote v. State*, 548 S.W.2d 42 (Tex.Cr.App.1977). Extrinsic evidence can be used to complete the story of the crime, *United States v. Krezdorn*, 639 F.2d 1327 (5th Circuit 1981), and where there is such a concurrence of common features between the several crimes to show logically that all might have resulted from a common plan or systematic course of action. *Jones v. State*, 376 S.W.2d 842 (Tex.Cr.App.1964). In cases involving theft by false pretext, evidence of other transactions or course of conduct by a defendant is admissible to show intent or scheme, tending to prove the guilt. *Etchieson v. State*, 574 S.W.2d 753 (Tex.Cr.App. 1978); *Mulchahey v. State*, 574 S.W.2d 112 (Tex.Cr.App.1978); *McDonald v. State*, 385 S.W.2d 253 (Tex.Cr.App.1964).

■ In this case Watts' theft was based on fraud or deception. His intent was equivocal and could not be inferred from the act itself. The extraneous offenses and the primary offense had common characteristics. In all offenses the victim was female. Watts informed the victims that he was a car salesman and bought and sold used cars at a profit. He assured the victims that if they lent him money to buy cars they would make a substantial profit. Watts never tendered to the victims any return on their investment but paid back only a small fraction of the monies lent. The extraneous offenses in this case were admissible to show his intent and to establish common system, scheme or plan. Nor did the court err in the number of extraneous offenses it allowed to be admitted. In *Jones v. State*, supra, more than one businessman testified to the defendant's acts to

show common plan or scheme. In *Mulcahey v. State*, supra, the court allowed five extraneous offenses to be admitted to prove common plan, scheme, or design in the way the defendant took vehicles from car lots and sold them. The extraneous offenses admitted were not extremely prejudicial to Watts and were necessary to show the common scheme.

■■ Douglas Watts contends that the evidence against him was insufficient to sustain the guilty verdict. Watts urges that the proof does not conform to the indictment because May 1 was alleged as the date of theft in the indictment and the proof showed Charletta Krause gave appellant money at other dates. A defendant may be convicted upon proof that the offense was committed within the period of limitation prior to the return of the indictment. Tex.Code Crim.Proc.Ann. art. 21.02, Subd. 6 (Vernon 1966); *Williams v. State*, 565 S.W.2d 63 (Tex.Crim.App.1978); *Glenn v. State*, 436 S.W.2d 344 (Tex.Cr.App.1969). Since appellant received money prior to the date alleged in the indictment and at other times prior to the return of the indictment, the proof sufficiently conforms to the indictment and is sufficient to show that Watts intentionally appropriated the money to his own use.

■■ A fundamental defect is alleged because the indictment does not fix the value of the property taken. Rather, it charged Watts with theft of $200.00 or more but less than $10,000.00. Ordinarily, to urge an error in an indictment, a complaint must be raised in the trial court. Tex.Code Crim.Proc.Ann. art. 21.21, Subd. 7 (Vernon 1966), and Article 27.09, Subd. 2 (Vernon 1966); *Stribling v. State*, 542 S.W.2d 418 (Tex.Cr.App.1976). Appellant Watts' complaint is in regard to the sufficiency of the indictment. The alleged defect is not so fundamental that it is properly considered by this court absent a motion to quash the indictment or an objection lodged to it at trial. *Mears v. State*, 557 S.W.2d 309 (Tex.Cr.App.1977).

Next we consider the contention of prosecution misconduct by repeatedly asking questions of a witness after an objection was sustained. The prosecutor in examining Anita Beverung, asked her whether the defendant was glad or upset when she went to his place of employment to recoup some of the monies she had given him under circumstances similar to those giving rise to the offense for which Watts was indicted. No answer was given to this question before an objection was made. The court sustained the defense objection and instructed the jury not to consider the question. The question was rephrased and answered as follows:

"You said you had some sort of argument with him, apparently he wasn't happy about your being there, right?"

This question was answered, "Right". The defense objected and before any ruling on that objection the prosecutor asked the witness what the defendant told her. Another defense objection was made and sustained and the jury was instructed to disregard the answer. Once more the court sustained a defense objection to the witness's testifying to the conclusion that the defendant did not like being bothered at work. The court further instructed the jury to disregard the conclusory response. Motion for mistrial by the defendant was denied.

■■ An error in improper questions or testimony put before the jury may generally be cured by withdrawal of such testimony and an instruction to disregard. An exception occurs where it appears that the question or the evidence was clearly calculated to inflame the minds of the jury and of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr.App.1977). When an improper question or testimony tends to inflame the minds of the jury and deprive the defendant of a fair and impartial trial, a mistrial is properly granted. Here no wrongful information was conveyed to the jury by the prosecutor's conduct in questioning witness Beverung about whether the defendant was bothered by her going to his place of employment. The trial court properly denied the motion for mistrial.

The judgment is affirmed.